(Hamilton Co., O., Common Pleas.)

WALLACE F. BROWNE et al. v. THE UNITED STATES BOARD & PAPER COMPANY, etc.

---

So much of a contract as is purely executory, between a corporation and one of its directors, in the making of which said director participated as a member of the board, is voidable at the option of the corporation.

---

JELKE, J.

In the hearing of this case I have dismissed from consideration all matters pertaining to the promotion and organization of the defendant company and confined myself to the matters immediately relating to the contract for the breach of which this action is maintained. I look only to the situation of the parties shortly prior to the making of the contract—the contract as set out in the resolution appointing Messrs. Browne and Stuart sales agents for the defendant company, and under by-law 8—and to the business done by the parties under such contract. I will speak of Mr. Wallace F. Browne as the representative of Messrs. Browne and Stuart in these matters.

I find that, so far as the making of this contract was concerned, said Wallace F Browne made no misstatement, neither concealment, in regard to any material fact entering into this contract. This contract was to run for one year from the date of its inception. The parties entered upon it and operated under it for four months, during which time both parties lived up to it, and respectively performed their duty to its strictest letter.

At the time of the termination of the business relation under this contract, the time of the alleged breach, Messrs. Browne and Stuart were entitled to nothing on account of their performance under said contract up to that time, which they had not received. I am inclined to the opinion that the construction placed upon such contract by Messrs. Browne and Stuart was the true, literal construction of such contract, and that, on account of the business done under such construction of said contract, the defendant company was entitled to nothing from Messrs. Browne and Stuart which it had not received.

At this time there remained eight months of this contract, for which time, as to both parties, this contract was executory, and as to such executory part of this contract there had been no performance on one side or the other, and there had been no vesting of interests which would estop inquiry into the voidability of the balance of the contract.

This being so, we squarely confront the question of the right of the defendant corporation, under this contract entered into by its board of directors and Wallace F. Browne, who was also a member of said board of directors, and participated as such in the making of the contract.

As I have said, there was no actual fraud practiced in the making of this contract; yet I find that the directors of said defendant company, other than Wallace F. Browne, did not realize what a good thing this contract, taken together with by-law 8, was for Messrs. Browne and Stuart; and it was not until after it had been operated under for four months that they awoke to a realization of how extremely profitable it was to Messrs. Browne and Stuart, and that it was a better thing than they had intended to give them, or than they then wanted them to have.

I am of opinion that this contract was voidable at the option of the defendant corporation if there were no vested interests, and if such option were exercised within a reasonable time. I am also of opinion, in view of all the facts and circumstances of the case, that the exercise of this option by the defendant corporation, and the avoiding of the contract was

within a reasonable time, and within such time as I find no reason which would put it in the mouth of Messrs. Browne and Stuart to complain was unreasonable.

I believe the general proposition, that a contract entered into between a corporation and one of its directors is voidable at the election of the corporation, provided that no reason exists which would estop the corporation, or make it inequitable for it to avoid the contract, to be true. I am aware that statements can be found in the text books which would seem at variance with this proposition, and I find, upon examination of the notes of cases upon which such text is based, that there are a large number of cases where contracts have been sustained, both at law and in equity, between a corporation and its directors; but an examination of the cases themselves shows that while the courts recognize the general principle which I have enunciated, there is some particular reason in each case why it would not be equitable or just for the corporation to seek to avoid the contract, and hence the courts have sustained the same. I find that these cases might be grouped under three heads:

1. Where the director has loaned money to the corporation.

In all these cases, the corporation having received the money and holding it, is not permitted to repudiate the contract under which it is obligated to pay it back.

2. Cases where the director has purchased the property of the corporation and such sale has been allowed to stand so long that there would be an inequitable inerference with vested rights to set it aside; and,

3. In contracts of employment between a corporation and its director where the services have been performed, and the services and the compensation stipulated for in the contract are not such as to be called unreasonable or to become evidence of a fraud, the courts have held that the director would be entitled to recover on a quantum meruit, and the compensation named in the contract was not an unreasonable measure of his deserts.

Speaking very generally, the phrase "vested interest" would cover them all.

I find that the contract involved in the case at bar falls under none of these heads; neither do I find a parallel case in the books. The nearest to an authority in this country, or in England, and the one which it urged upon me the most strongly by counsel for plaintiffs is the case of the United States Rolling Stock Company v. the Atlantic & Great Western Railroad in the 34 Ohio St., page 450 and page 459. But the more carefully I read that case and the reasoning of the learned court, in my endeavor to find out exactly what was there decided the more I am convinced that it tends rather against than for the contention of plaintiffs' counsel. The case construes the relation of the director to his corporation on principles of agency involving a fiduciary relation; and, in the working up to its conclusion, the court examines the relation of minority directors common to the two corporations, and finds it to be that of an agent representing two principals. In such case the court find that there is no presumption that the agent of two principals will deal unfairly with either.

This being so in a contract between two corporations through their respective boards of directors, in each of which there is an untrammeled majority, there is on each side of such contract a body of independent wits dealing at arm's length in fair business warfare, with the common directors in the role of neutrals.

In the case at bar the principal on one side of the common agent is the agent himself. And in such relation the presumption is different and directly contrary to that mentioned above. The law recognizes that the promptings of selfishness are so insidious and so coercive in their power as to override duty in spite of honest intention. This being so, the law will not examine into the fairness of the contract; but a director in dealing with his corporation must realize that up

until the time that there is an actual vesting of interests he is at the peril of the corporation avoiding it at any minute.

The court said in Stewart v. Lehigh Valley Railroad Company, 38 New Jersey Law Reports, page 523:

"Nor is it proper for cne of a board of directors to support his contract with his company, upon the ground that he abstained from participating as director in the negotiations for and final adoption of the bargains by his co-directors; the very words in which he asserts his right declare his wrong. He ought to have participated and in the interest cf the stockholders, and if he did not, and they have thereby suffered loss, of which they shall be the judges, he must restore the rights he has obtained—he must hold against them no advantage that he has got through neglect of his duty towards them."

I find that at the time of the making of this contract Mr. Wallace F. Browne was the shrewdest member of the board of directors in regard to matters of this kind, and that while he told them no lie, and concealed no material fact, yet he was the only one who had any full realization cf how enormously profitable the workings cf this contract would be to Messrs. Browne and Stuart. I am thoroughly convinced that if Mr. Browne had been acting in the place of Messrs. Duncan or Wrigley, no living soul could have obtained this contract. If Mr Browne had been acting in the place of Messrs. Duncan or Wrigley, and had exercised his business talents up to their highest bent, as we are justified in presuming he did on his own behalf, all the future profits under this contract would have been anticipated, and I am of opinion that it was a thing too good for reasonable men to have given to a stranger, and I see no reason why Messrs. Browne and Stuart, in the weighing cf the reasonableness of this contract, should stand in any better relation. Mr. Browne could not lay aside his capacity as a director like a garment. The corporation was entitled to the best exercise of his intelligence in its interest.

It is true that it is in testimony that it was generally understood in the organization and promotion of this company that Messrs. Browne and Stuart were to have the sales agency, and it is only fair to presume that such sales agency was to be upon the usual terms. I have given this testimony weight to the extent of finding that there was generally a cordial disposition on the part of everybody interested in the corporation toward Messrs. Browne and Stuart, and that as to any desirable contract they were to have preference cver a mere stranger. But when it comes to saying that they were to have a ccntract on terms more favorable than a stranger, because Messrs. Browne and Stuart had done anything which wculd entitle them to it, would bring into this case the whole matter of the promotion and the organization of this company, which I, on the objection of plaintiffs' counsel, have excluded from it.

I am aware that this is an action at law, and that at common law, in the absence of express statutory prohibition, contracts were sustained between a corporation and its director, but I am of opinion that equity would have done just what this board of directors took upon themselves to do, and such equitable action by said board can not be made the basis of an action at law for damages.

In addition to the difference which I have indicated above between the case at bar and that of the Rolling Stock Company v. the A. & G. W. Railroad, there are two further points of difference: One, that in said case there had been an actual vesting of interests, and the other, the court found that the corporation had delayed its effort to avoid the contract an unreasonable time.

It is my opinion that the directors had a right to avoid this contract, and be themselves the judges as to its fairness and reasonableness, and that a court ought not inquire into this. If, however, I am wrong in this, and the fairness and reasonableness of the contract are to be the test of the di-

rectors' right to exercise this option, I would say that this contract, construed together with by-law 8, and as acted upon by these parties, was one which no stranger could reasonably have expected to get, and that Messrs. Browne and Stuart should stand, in this case, in no better position than that of a stranger, excepting that they enjoyed a general friendliness which, other things being equal, would give them a preference over a stranger. If it were the intention to give Messrs. Browne and Stuart an extraordinarily good thing in consideration of and as a reward for their services in the organization and promotion of the company, it would be another case, and a contract which the plaintiffs in this case and their counsel have expressly disclaimed.

It is urged that this contract should be allowed to stand as a subsisting contract between these parties, and its breach furnish a basis for plaintiffs' action for damages, on the ground that all the shareholders knew of this contract and acquiesced in it. I do not find this to be the case. The shareholders knew, in a general way, that Messrs. Browne and Stuart were to be the selling agents of the mill. It does not appear that they knew of the exact terms of this contract and of its relation to by-law 8, and the construction put upon it by the parties thereunder. The directors were not awake to this for four months, still less the shareholders.

If we were concerned about anything which had been done, and were engaged in an adjustment of rights and liabilities arising out of accomplished facts under this contract, the question would be different; but we must remember that we are dealing only with the executory part of it.

I am of opinion that, as a pure matter of law, plaintiffs can not maintain this action; and will, therefore, give judgment for the defendant.

C. B. Matthews, Robert B. Bowler and Province M. Pogue, for Plaintiffs.

Gorman & Thompson, for Defendant.